UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL NATHAN CLARK,

     Plaintiff,                           Case No. 2:21-cv-12022
                                     District Judge Linda V. Parker
v.                                Magistrate Judge Kimberly G. Altman

CHRISTINE WORMUTH,

     Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## DEFENDANT'S MOTION TO DISMISS (ECF No. 13)[1]

I.    Introduction

This is an unlawful termination case. Plaintiff Daniel Nathan Clark (Clark),

proceeding *pro se*, is suing Christine Wormuth (Wormuth), the United States

Secretary of the Army, alleging that he was unlawfully terminated from his

position with the Department of the Army because of his disability (epilepsy) in

violation of the Rehabilitation Act. *See* ECF Nos. 11, 12.

Before the Court is Wormuth's motion to dismiss the amended complaint

under Fed. R. Civ. P. 12(b)(6) on the grounds that Clark did not file this case

---

[1] Upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

1

within the applicable limitations period.  (ECF No. 13).  The motion was referred

to the undersigned for a Report and Recommendation under 28 U.S.C. §

636(b)(1)(B).  (ECF No. 17).  As will be explained, the motion is more properly

construed as a motion for summary judgment based on the record presented.  For

the reasons that follow, the undersigned RECOMMENDS that Wormuth's motion

be GRANTED.

## II.    Background

The following facts are gleaned from the amended complaint, the addendum

in support of the amended complaint, the Equal Employment Opportunity

Commission (EEOC) decision attached to the original complaint, Clark's earlier

lawsuit filed in this district, and exhibits attached to Clark's response.

### A.    Substantive Facts

The facts pertaining to Clark's termination were summarized by the EEOC

in its decision and are provided below:

> At the time of events giving rise to this complaint, [Clark] worked as
> an Equipment Specialist, Intern, (Auto), GS-1670-07, at the Agency's
> Material Handling Equipment (MHE) Group, Tank-Automotive &
> Armaments Command (TACOM) in Warren, Michigan.
>
> On March 18, 2016, [Clark] filed an EEO complaint alleging that the
> Agency discriminated against him on the basis of disability (Epilepsy)
> when, on February 2, 2016, he was terminated from employment with
> the Agency.
>
> [Clark's] first line supervisor (S1) explained that [Clark] was within his
> two-year probationary period, during which S1 evaluated [Clark's]

2

suitability for continued employment with the Agency. In October or November 2015, the Agency's EEO office notified S1 that a private civilian contacted them with a complaint against [Clark]. S1 spoke with the private civilian, who explained that she and [Clark] had matched on Tinder, a dating app. [Clark] then started harassing her with derogatory comments. The woman gave S1 screenshots of their conversations. A review of these screenshots reveals that [Clark] made derogatory and offensive comments regarding women and LGBTQ individuals. As a result of his conversation with the civilian and documentary evidence, S1 determined that [Clark] was not suitable for continued employment and decided to remove [Clark].

S1 memorialized his conversation with the woman. According to the memorandum, the woman explained that [Clark] had provided a link to his Instagram profile in his Tinder profile. After she received the offensive messages, the woman accessed [Clark's] Instagram page. She observed [Clark's] username and a picture in which [Clark] displayed his workplace identification. The woman further noted that [Clark] was on OKCupid, another dating app, using the same username as his Instagram page, and on his OKCupid profile, [Clark] explicitly stated that he worked for the Agency. She "said she didn't hunt down the information, but that it is all linked through the different sites."

S1 noted that after he made the decision to terminate [Clark's] employment [Clark] began arriving to work late and had not entered his timecards properly. On the advice of Human Resources, S1 included [Clark's] failure to properly certify his timecards as an additional reason for his termination. One day prior to his termination, [Clark] presented S1 with a letter from his doctor explaining that he had epilepsy.

In his affidavit, [Clark] denied that he was seeking accommodation for his condition. Rather, [Clark] argued that S1 ignored that the medication he takes for his condition makes it difficult for him to wake up in the morning. [Clark] admitted sending the messages to the private civilian but contended that he was quoting a stand-up comedian. [Clark] said that the woman never told him it was offensive to her, and that "there was no reason for her to search for me on the internet and compile a bunch of information on me."

At the conclusion of the investigation, the Agency provided [Clark] with a copy of the report of investigation and notice of his right to request a hearing before an Equal Employment Opportunity Commission Administrative Judge (AJ). [Clark] timely requested a hearing. Over [Clark's] objections, the AJ assigned to the case granted the motion for summary judgment and issued a decision without a hearing on November 30, 2018. In the decision, the AJ concluded that [Clark] failed to provide evidence to rebut the Agency's legitimate explanations for terminating his employment. As a result, the AJ found that [Clark] was not subjected to discrimination as alleged. The instant appeal followed.

(EEOC Decision, ECF No. 1-1, PageID.12-13).

The EEOC decision upholding dismissal of Clark's unlawful termination claim was issued on January 27, 2021. (*Id.*, PageID.16). The decision included the following language regarding Clark's right to file a federal lawsuit:

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

(*Id.*) (emphasis in original). The following language was included in the Certificate of Mailing for the decision: "**For timeliness purposes, the Commission will presume that this decision was received within five (5)**

4

**calendar days after it was provided to the parties.**" (Certificate of Mailing,

ECF No. 15, PageID.124) (emphasis in original).

Five days from January 27, 2021 (date of mailing), is February 1, 2021.  90

days from February 1, 2021, is May 2, 2021.

B.    Procedural History

1.    Clark's First Lawsuit (*Clark I*)

On April 23, 2021, nine days before the May 2, 2021 deadline, Clark filed a

*pro se* complaint in this district alleging unlawful termination and naming the

following defendants: (1) United States Department of the Army, (2) John E.

Whitley, (3) US Army TACOM, and (4) Albert Wurst.  *Clark v. United States*

*Department of the Army, et. al*, Case No. 21-10920.  *See* ECF No. 1 in Case No.

21-10920.  Clark used a form complaint that included a subsection titled "For

Parties Without an Attorney," which states: "I agree to provide the Clerk's Office

with any changes to my address where case related papers may be served.  I

understand that my failure to keep a current address on file with the Clerk's Office

may result in the dismissal of my case." (*Id*., PageID.19).  Under the quoted

language, Clark entered the date of April 23, 2021, along with his typed name.

(*Id*.).

Three days after filing the complaint, Clark filed an application to proceed

without prepaying fees or costs.  (ECF No. 3 in Case No. 21-10920).  On June 17,

5

2021, the Court denied Clark's application because it found that he had the "financial resources to pay [the] filing fee." (ECF No. 4 in Case No. 21-10920, PageID.26). The Court gave Clark until July 8, 2021, to pay the filing fee, and warned that "[f]ailure to pay the filing fee by this deadline may result in dismissal of the complaint." (*Id*.). The order denying Clark's application was mailed on the date it was entered to an address in Royal Oak which Clark provided on the form complaint. *See id*., PageID.27.

On July 20, 2021, 12 days after the July 8, 2021 deadline, the Court entered an order of dismissal citing Clark's failure to file the required filing fee. (ECF No. 5 in Case No. 21-10920). This order was also mailed to the Royal Oak address provided by Clark. On August 12, 2021, the order was returned to the Court as undeliverable. (ECF No. 6 in Case No. 21-10920). At no time did Clark provide the Court with an address different from the Royal Oak address.

## 2.     Clark's Second Lawsuit (*Clark II*)

On August 30, 2021, Clark filed the instant case providing a different address in Royal Oak than the one he used in *Clark I*. Clark also did not submit the filing fee or an application to proceed without prepaying fees or costs with the complaint. *See* ECF No. 1. Accordingly, on September 14, 2021, the Court entered an order stating that Clark had 14 days to either submit the filing fee or an application to proceed without prepaying fees or costs "or this case may be

dismissed." (ECF No. 3, PageID.18).  Clark paid the filing fee on September 20, 2021.

On October 6, 2021, the Clerk sent Clark a notice regarding his responsibility to provide a correct address.  The notice reads in relevant part:

> **THIS NOTICE IS A REMINDER** that you are required, pursuant to E.D. Mich. LR 11.2, to promptly file a notice with the Clerk and serve a copy of the notice on all parties whenever your address, e−mail address, phone number and/or other contact information changes.  In addition, Rule 11 of the Federal Rules of Civil Procedure requires you to include your address on every document filed with the Clerk.
>
> Failure to promptly notify the court of a change in address or other contact information may result in the **dismissal** of your case.

(ECF No. 4, PageID.20) (emphasis in original).

On December 7, 2021, Clark filed a motion styled "Motion for Amending Defendants" in which he requested to remove Whitley as a defendant and substitute Wormuth as the acting Secretary of the Army.  (ECF No. 7).

On February 25, 2022, Defendants filed a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for untimeliness.  (ECF No. 10).  However, on March 1, 2022, Clark filed an amended complaint along with the addendum to the amended complaint.  (ECF Nos. 11, 12).  In the amended complaint, Clark dropped all of the previously named defendants and named Wormuth as the sole defendant.  *See* ECF No. 11.  In light of the amended complaint, the Court issued an order

denying both Clark's motion to amend and Defendants' motion to dismiss as moot. (ECF No. 16).

On March 15, 2022, Wormuth filed the instant motion to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6) for untimeliness. (ECF No. 13). The motion is fully briefed and ready for decision. (ECF Nos. 15, 18).

On March 29, 2022, Clark filed a Notice of Change of Address providing his new Sterling Heights address. (ECF No. 14).

### III.   Analysis

#### A.   Legal Standard

##### 1.   Conversion Under Rule 12(d)

Wormuth filed her motion to dismiss under Fed. R. Civ. P. 12(b)(6). However, "[i]f on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Here, Clark attached exhibits, such as emails between himself and the *Pro Se* Case Administrator, to his response that are not referenced in the amended complaint. In her reply, Wormuth addresses these exhibits.

Under the rules, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion[,]" Fed. R. Civ. P. 12(d), before a Court can treat a motion to dismiss as one for summary judgment. *See*

*also Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 493 (6th Cir. 1995).  That

said, "where the plaintiff responds to the motion to dismiss by also relying on

evidence outside the pleadings and by suggesting to the court that the motion be

treated as one for summary judgment, no notice is necessary, and no surprise

should result from the conversion."  *Morton v. ICI Acrylics, Inc.*, 69 F. Supp. 2d

1038, 1041 (W.D. Tenn. 1999) (converting a motion to dismiss based on statute of

limitations to a motion for summary judgment where parties relied on matters

outside the pleadings); *see also Emmons v. McLaughlin*, 874 F.2d 351, 355-357

(6th Cir. 1989) (upholding district court's conversion of motion to dismiss to one

for summary judgment over the plaintiff's objections where both parties submitted

affidavits).

Here, both parties have relied on evidence outside of the pleadings in their

motion papers in support of their arguments, making conversion of Wormuth's

motion to dismiss into a motion for summary judgment appropriate and not

prejudicial to Clark.  *See Morton*, 69 F. Supp. 2d at 1041 ("In the instant case,

because both parties rely on evidence outside the pleadings, the court converts

ICI's motion to dismiss into a motion for summary judgment.").  Thus, the

undersigned converts the motion to dismiss to a motion for summary judgment in and will evaluate the parties' arguments under Rule 56.

### 2.   Summary Judgment Under Rule 56

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Clark is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under [*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512-513 (2002)] and [the Federal Rules] are inapplicable.' " *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

## B.    Application

Wormuth argues that Clark's lawsuit should be dismissed because it was not filed within the time period provided by the applicable law. Clark's claims are brought under the Rehabilitation Act, 29 U.S.C. § 794. *See* ECF Nos. 11, 12. The Rehabilitation Act incorporates "[t]he remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-16)." 29 U.S.C. § 794a(a)(1). Under § 2000e-16, a lawsuit must be filed within 90 days from the date the employee receives the EEOC's final decision. 42 U.S.C. § 2000e-16(c) ("Within 90 days of receipt of notice of final action taken by . . . the Equal Employment Opportunity Commission . . . an employee . . . may file a civil action. . . .").

11

Clark does not dispute that the instant lawsuit is untimely.  As noted above, Clark was deemed to have received the EEOC decision on February 1, 2021, but did not file this lawsuit until August 30, 2021, which is well past the 90-day statutory limit.  Clark, however, says that his untimeliness in filing this lawsuit should be excused.  In particular, Clark argues that he is entitled to equitable tolling or the application of excusable neglect because he timely filed *Clark I* and never received notice that his application to proceed without prepaying fees or costs was denied, that Wormuth did not adhere to deadlines during the administrative process, and that Wormuth would not be prejudiced by Clark's delay in filing *Clark II*.

Both parties refer to a number of legal doctrines that could be used to excuse Clark's untimeliness.  Each of these doctrines will be addressed below.

### 1.     Equitable Tolling

"The federal courts sparingly bestow equitable tolling."  *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000).  "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control."  *Id*. at 560-561.  "Absent compelling equitable considerations, a court should not extend limitations by even a single day."  *Id*. at 561; *see also Jenkins v. Widnall*, 211 F.3d 1269, at *2 (6th Cir. 2000) (unpublished table

12

decision) ("Both the Supreme Court and the Sixth Circuit have repeatedly declined to toll the limitations period where the plaintiffs have failed to demonstrate extreme circumstances.").

In the Sixth Circuit, "[t]he following five factors are relevant to a determination of whether tolling should be allowed: (1) lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Dixon v. Gonzales*, 481 F.3d 324, 331 (6th Cir. 2007). "The foregoing factors are not exclusive and the tolling decision should be made on a case-by-case basis." *Id*. Additionally, "the Sixth Circuit has consistently rejected the most common arguments made by plaintiffs in favor of equitable tolling. Thus, for example, claims that a *pro se* plaintiff was ignorant of the legal requirements or incorrectly calculated the applicable time periods are insufficient to justify tolling." *Jackson v. City of Memphis*, No. 15–2313–SMH–dkv, 2015 WL 7162224, at *4 (W.D. Tenn. May 22, 2015), *report and recommendation adopted*, 2015 WL 7162195 (W.D. Tenn. Nov. 13, 2015); *see also Johnson v. U.S. Postal Serv.*, No. 86–2189, 1988 WL 122962, at *3 (6th Cir. Nov. 16, 1988) (refusing to apply equitable tolling when *pro se* litigant missed filing deadline by one day).

Factors one, two, and five do not favor application of equitable tolling. Clark had actual notice of the filing requirement. *See* ECF No. 15, PageID.93. The EEOC determination clearly informed Clark of the 90-day period he had in which to file a case in district court. (ECF No. 1-1, PageID.16). Additionally, Clark does not argue that he was ignorant of the statute of limitations period. *See Ball v. Abbott Advert., Inc.*, 864 F.2d 419, 421 (6th Cir. 1988) ("The lawyer's actual knowledge destroys any possible basis for applying the 'equitable tolling' doctrine here.").

Factor three also weighs against application of equitable tolling. Even though Clark initially demonstrated diligence in pursuing his rights by filing his first lawsuit within the 90-day period, this initial display of diligence must be considered alongside Clark's other actions in *Clark I*. Clark failed to pay the filing fee in a timely matter thereby leading to the dismissal of his first lawsuit.

Clark argues that he is nevertheless entitled to tolling because he did not learn of his first suit's dismissal until August 2, 2021, when the *Pro Se* Case Administrator sent him a copy of the order. (ECF No. 15, PageID.113). Clark is incorrect for two reasons.

First, his failure to timely learn of the Court's dismissal is his fault. As noted above, in *Clark I*, Clark certified that he "agree[d] to provide the Clerk's Office with any changes to address." (ECF No. 1 in Case No. 21-10920,

14

PageID.9).  The form also warned him of the potential of dismissal should he fail to update his address.  Assuming he changed his address while *Clark I* was pending, which would bolster Clark's contention that he did not receive the dismissal order, it is clear from the record in *Clark I* that he did not inform the Court of his new address.  And the fact that Clark properly updated his address in this case indicates he was not only aware of his obligation but is able to comply with it.  Thus, Clark cannot rely on a delay he caused in *Clark I* to request tolling in this case.  *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.").

Second, Clark's emails with the *Pro Se* Case Administrator show that, even after he learned that his first suit had been dismissed on August 2, 2021, *see* Clark Emails, ECF No. 15, Page ID.113-114, he did not attempt to submit a new complaint until August 16, 2021, *see id.*, PageID.115-117.  And as noted above, the complaint in *Clark II* was defective when it was filed on August 30, 2021.  Clark did not correct the defect until paying the filing fee on September 20, 2021.

The undisputed facts show that only nine days remained in the statute of limitations when Clark filed his first suit.[2]  Then he waited 41 days after the dismissal of *Clark I* to file *Clark II*.  This is not indicative of diligence.

Factor four is neutral.  Wormuth argues that she would be prejudiced by Clark's delay because he "is seeking damages for backpay and each day he has delayed properly initiating this suit potentially increases the Army's damages." (ECF No. 13, PageID.78).  Courts have found undue prejudice in discrimination cases when plaintiffs are seeking backpay because those damages continue to accrue during the equitably tolled period.  *See, e.g.*, *Spurlock v. Univ. of Toledo*, 86 F. Supp. 3d 744, 747 (N.D. Ohio 2015).  However, Clark asserts that he will not seek backpay for any equitably tolled period in order to mitigate this concern.  *See* ECF No. 15, PageID.94.

Wormuth further argues that Clark's "unnecessary delays in initiating this suit unfairly impair the Army's ability to locate evidence and witnesses to defend against Clark's claims." (ECF No. 13, PageID.79).  However, it appears there were delays in the administrative process which were due to the Army missing

---

[2] This calculation credits Clark's argument that he is entitled to five days of tolling because he did not actually receive the EEOC's final decision on January 27, 2021 (date of mailing).  As noted above, five days from January 27, 2021, is February 1, 2021.  90 days from February 1, 2021, is May 2, 2021.  Even giving Clark the benefit of the extra five days, *Clark II*, filed on August 30, 2021, was still not timely filed.

deadlines, not Clark.  Accordingly, the fact that over six years have passed since the time of Clark's termination can be attributed to the actions of both parties.

In sum, four out of the five equitable tolling factors set forth by the Sixth Circuit weigh against the application of the doctrine.  Furthermore, no exceptional circumstances are present in this case.  Clark simply failed to update his address with the Court during the pendency *Clark I*, which led him to miss the deadline to pay the required filing fee.  It was Clark's responsibility to keep his address up to date. [3]  *See Yeschick v. Mineta*, 675 F.3d 622, 630 (6th Cir. 2012) ("Regardless of the method of communication utilized (posted mail or email), it is the party, not the court, who bears the burden of apprising the court of any changes to his or her mailing address.").  His failure to do so demonstrates a lack of diligence he cannot overcome.

Finally, Clark argues that denying him equitable tolling will violate due process.  However, it is well-established that the application of a constitutionally enacted statute of limitations does not violate due process.  *See Sun Oil Co. v.*

---

[3] Clark faults both the district judge in *Clark I* and the *Pro Se* Case Administrator for communication issues and delays during the pendency of the first lawsuit. However, even if the undersigned fully credited Clark's arguments, the fact remains that if Clark had updated his address with the Court as instructed by the form complaint he used to initiate that case, Clark would have been able to pay the filing fee by the deadline set by the district judge.  Neither the district judge nor the *Pro Se* Case Administrator can be fairly blamed for Clark's failure to do so.

*Wortman*, 486 U.S. 717, 730 (1988); *Mathis v. Eli Lilly & Co.*, 719 F.2d 134, 141 (6th Cir. 1983).

For the reasons stated above, the undersigned recommends against applying the doctrine of equitable tolling in this case.

### 2.      Equitable Estoppel

"Estoppel is an equitable doctrine which a court may invoke to avoid injustice in particular cases." *Fisher v. Peters*, 249 F.3d 433, 444 (6th Cir. 2001). " '[T]he traditional elements of equitable estoppel are: (1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel.' " *Mich. Exp., Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004) (quoting *LaBonte v. United States*, 233 F.3d 1049, 1053 (7th Cir. 2000)).

The government, however, "may not be estopped on the same terms as any other litigant." *Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 60 (1984). "The party attempting to estop the government bears a very heavy burden." *Fisher*, 249 F.3d at 444. "At a minimum, the party must demonstrate some 'affirmative misconduct' by the government in addition to the other estoppel elements." *Mich. Exp., Inc.*, 374 F.3d at 427. Affirmative misconduct "[i]s an act by the government that either intentionally or recklessly misleads the claimant." *Id*.

18

Here, Clark argues that the Army's failure to adhere to deadlines during the administrative process entitles him to equitable relief now. This argument is unavailing. Clark could have filed a federal lawsuit "after 180 days from the date of filing an appeal with the EEOC if there ha[d] been no final decision." *Thompson v. Wilkie*, No. 1:18CV1777, 2021 WL 5017400, at *1 (N.D. Ohio Aug. 31, 2021), *report and recommendation adopted*, 2021 WL 4472112 (N.D. Ohio Sept. 30, 2021) (citing 29 C.F.R. §§ 1614.407(c), (d)). Clark chose not to do so. Instead, he proceeded with the administrative process despite the delays. As such, he cannot use the delays in the administrative process as grounds for finding his claim timely or equitably estop Wormuth from asserting the statute of limitations as a defense.

Moreover, Clark has not alleged any conduct by Wormuth or any other employee or official of the Department of the Army amounting to affirmative misconduct. *See Mich. Exp., Inc.*, 374 F.3d at 427. For instance, Clark does not allege that he was informed the statute of limitations for filing a federal lawsuit would be tolled or otherwise affected by the delays in the administrative process. Accordingly, Clark has failed to demonstrate that he has met the "very heavy burden" of establishing he is entitled to equitable estoppel against Wormuth. *See Fisher*, 249 F.3d at 444.

3.      Excusable Neglect

19

It is unclear whether excusable neglect can be applied to excuse a party's failure to abide by the applicable statute of limitations.[4]  Assuming but not deciding the issue, the undersigned will consider whether Clark meets the legal standard for excusable neglect.

"[T]he governing legal standard for excusable-neglect determinations is a balancing of five principal factors: (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith." *Nafziger v. McDemott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).  "The most important factor is the reason for the delay."  *Perez v. Birkett*, No. 2:05-CV-74003, 2006 WL 3751166, at *3 (E.D. Mich. Dec. 18, 2006) (citing *Weinstock v. Clearly, Gottlieb, Steen & Hamilton*, 16 F.3d 501, 503 (2d Cir. 1994)).  "[T]he excusable neglect standard has consistently been held to be 'strict,' and can be met only in extraordinary cases."  *Marsh v. Richardson*, 873 F.2d 129,

---

[4] The "excusable neglect" standard has been applied to deadlines imposed by the Federal Rules, such as deadlines to file motions, responses, or discovery materials. *See, e.g.*, *Yeschick v. Mineta*, 675 F.3d 622, 629 (6th Cir. 2012) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 399 (1993)).

130 (6th Cir. 1989) (interpreting "excusable neglect" in the context of Federal Rule

of Appellate Procedure 4(a)(5) as it existed after the 1979 amendments).

The analysis required for a finding of excusable neglect is substantially

similar to the analysis required to determine whether a statute of limitations should

be tolled.  As such, the undersigned relies on her earlier discussion of the equitable

tolling factors.

Again, the "delay" in this case was Clark's untimely filing of *Clark II*.

Although *Clark I* was timely filed, it was dismissed for failure to pay the filing fee.

Clark did not receive the Court's orders in *Clark I* because he failed to update his

address with the Court.  Under these circumstances, the undersigned finds that

Clark has failed to establish excusable neglect.

4.    Clark's *Pro Se* Status

Clark suggests that his case should proceed because of his *pro se* status.[5]

However, the statute of limitations "applies to pro se plaintiffs, and even one day's

delay is fatal to a claim."  *Williams v. Sears, Roebuck & Co.*, 143 F. Supp. 2d 941,

945 (W.D. Tenn. 2001); *see also Baldwin Cty. Welcome Ctr.*, 466 U.S. at 151

(refusing to toll 90-day statute of limitations for *pro se* plaintiff); *Truitt v. Cty. of

Wayne*, 148 F.3d 644, 648 (6th Cir. 1998) (refusing to toll statute of limitations

---

[5] Although *pro se*, Clark appears to be at least a second-year law student.  *See* ECF
No. 15, PageID.115 (showing WMU Cooley Law School signature block and
Cooley email address).

when a *pro se* plaintiff filed suit within the deadline but did not timely pay the filing fee).

Moreover, as evident from the documents Clark provided, the EEOC gave Clark detailed instructions on how and when to file, (EEOC Decision, ECF No. 1-1, PageID.16), and the Court's *Pro Se* Case Administrator gave him a copy of the Court's *Pro Se* Filing Handbook which explains how to properly file suit and pay the filing fee, (Court Email, ECF No. 15, PageID.108-110).  Having received these instructions, Clark's actions which resulted in this case being filed outside of the statute of limitations do not meet the level of diligence to justify equitable tolling. *See Baldwin Cty. Welcome Ctr.*, 466 U.S. at 151.

## IV.   Conclusion

Ultimately, Clark has failed to establish his entitlement to equitable tolling, equitable estoppel, and/or excusable neglect in this case.  There is no genuine issue of material fact over which reasonable minds could differ on this point.  The undersigned is mindful that if this recommendation is adopted, Clark will not be able to further pursue his unlawful termination claim.  While this is a harsh result, it is necessitated by the proper application of the statute of limitation and equitable principles to the facts of this case.  Therefore, for the reasons stated above, the

undersigned RECOMMENDS that Wormuth's motion, (ECF No. 13), be

GRANTED and the case DISMISSED.


Dated: August 25, 2022              s/Kimberly G. Altman
Detroit, Michigan                    KIMBERLY G. ALTMAN
                                     United States Magistrate Judge


## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &

Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &

Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 25, 2022.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager

24